10938

STATE v. SEABORN

(112 S. E. 916)

1. CRIMINAL LAW—EVIDENCE AT INQUEST INADMISSIBLE WHERE CORONER'S STENOGRAPHER IS NOT PRODUCED.—In prosecution for murder, evidence taken at the inquest was properly excluded where the coroner's stenographer was not produced nor his absence accounted for, and the coroner could only say that it was correct according to his best recollection.

2. HOMICIDE—INSTRUCTION HELD PREJUDICIAL ERROR AS DISCREDITING THE DEFENSE OF SELF-DEFENSE.—In prosecution for murder, an instruction *held* prejudicial to defendant as discrediting the valid defense of self-defense where it recited that the Court "would feel satisfied * * * if it could not get any jury, any set of jurors to really understand the law of self-defense," and with reference to the defendant in another trial who was acquitted, "and he succeeded in getting a jury to acquit him on that absurd statement of self-defense."

Before MEMMINGER, J., Greenville, November, 1921. Reversed.

Bub Seaborn convicted of the killing of Alice Jones and appeals.

*Messrs. Mauldin & Love* and *G. D. Oxner,* for appellant, cite: *Charge intimating opinion of Judge and discrediting defense was erroneous:* 89 S. C., 228; 109 S. C., 117; 109 S. C., 274. *Error to refer to other cases in the charge:* 103 S. C., 277; 105 S. C., 55; 98 S. C., 297; 107 S. E., 149. *Testimony at inquest admissible:* 29 S. C., 201.

*Mr. D. W. Smoak, Solicitor,* for respondent.

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an indictment for murder. There are two questions.

I. His Honor refused to allow the introduction of evidence taken at the coroner's inquest. The evidence was taken by a stenographer in shorthand, and then transcribed. The stenographer who took the evidence and transcribed it was not produced, nor was his absence accounted for. The coroner could only say it was correct to the best of his recollection. There was no error in excluding it.

II. The presiding Judge charged:

"Now, Mr. Foreman and gentlemen of the jury, the time of this Court now, gentlemen, is rapidly coming to an end. When this Court will cease to be your presiding Judge, the Criminal Court will adjourn, and not be taken up again until the next term in January, when some other Judge will be here to preside over your deliberations. It is a source of satisfaction to me that a great number of cases have been disposed of, so far as this Court can dispose of them. Numbers have come forward and pleaded guilty and submitted to the punishment which the Court in its discretion saw fit to put upon them, always giving the benefit to those who pleaded guilty to the unbroken precedent of the law that, where one comes in and acknowledges his guilt, throws himself upon the mercy of the Court, that mercy will be extended to him. Many others have been fiercely contested and tried. Juries have acquitted many; have convicted some. Of those convicted there are not more than two or three who have as yet submitted to the law in any way whatsoever. A little simple notice of appeal three or four lines handed to the solicitor enables them to give a bond, they go out, keep up fictitious and bogus appeal as long as it can be possibly done,

and the case is probably thoroughly, entirely forgotten; then appeal is made to the board of pardons, a jury which is of greater power than even a petit jury, get a favorable recommendation, and be pardoned by the Governor, so that after all but little is really finally accomplished. Still the Court has done all that it could do in all that comes within its prerogative and prerogative of juries to present these cases to the jury, and have them do their part in passing upon the case one way or the other.

"Now, in this case you have the defendant charged with murder, and under that indictment, in addition to his plea of being not guilty, he sets up self-defense. Therefore it becomes the duty of the Judge to charge the jury, without in any manner touching upon the facts, because the Constitution prohibits that, upon the points of law involved in the case, and those points are the law as to murder and of self-defense. Personally this Court would feel satisfied if after going over South Carolina for near 17 years, throwing the best part of his life into this work, if it could not get any jury, any set of jurors, to really understand the law of self-defense, as simple as it really is.

Now, we will take up first, gentlemen, that view as it is involved in this case. What does this defendant do? He comes in here and admits that he killed this woman. He claims that you should excuse him on the ground of self-defense. Now, just simply getting up and saying self-defense, gentlemen, is not enough to excuse a man for killing a woman or a man. It is true that a jury here has acquitted a man on the ground of self-defense when the other one had a pistol—a toy—no cartridges in it, wrapped up in a box in his hip pocket, and he succeeded in getting a jury to acquit him on that absurd statement of self-defense. The real idea of self-defense, gentlemen, is based upon necessity; that it was necessary for the man to kill that woman in order to save himself from the loss of his life or of serious bodily harm. Now that necessity, gentleman, is not only what he

thought was a necessity, because it must be so if you are going to excuse him on that ground, 'that he thought it was a necessity, but that a man of reasonable prudence, firmness, and courage, placed as he was would have thought it was necessary and been justified in such a belief under all the facts and circumstances in the case."

The charge manifestly discredited the defense of self-defense. Self-defense is a valid defense, and it is prejudicial error to discredit it.

The judgment is reversed, and a new trial ordered.